770 A.2d 295

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David R. SHAW, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 20, 1999.

Decided April 16, 2001.

618

Samuel K. Gates, Hanover, Ronald J. Gross, Doylestown, for David Shaw.

Michael A. George, Dist. Atty., for Com.

## OPINION

ZAPPALA, Justice.

This appeal presents the issue of whether under Article 1, Section 8 of the Pennsylvania Constitution, a police officer may obtain the results of a blood alcohol test, pursuant to 75 Pa.C.S. § 3755 (reports by emergency room personnel), without a search warrant and without having requested that the blood alcohol test be performed, for purposes of possible prosecution under 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or a controlled substance).

On August 29, 1996, at approximately 3:40 p.m., Pennsylvania State Police Trooper Todd Hershey arrived at the scene of a two vehicle accident involving a van and an automobile. The accident occurred at the intersection of State Route 394 and the south exit ramp of State Route 15. Trooper Hershey observed a stop sign and thirty-two feet of skid marks on the exit ramp and determined that the driver of the van had failed to stop, entered State Route 394 in the path of a westbound vehicle and caused the collision. Trooper Hershey's subse-

quent inspection of the interior of the van revealed a cooler containing ice and several unopened cans of beer. Several opened and empty beer cans were also discovered in the vehicle. Trooper Hershey observed that the cooler and all beer cans were readily accessible to the driver.

The driver of the van, Appellant David Shaw, had been taken by ambulance to Gettysburg Hospital. After Trooper Hershey arrived at Gettysburg Hospital, he approached Appellant and inquired whether he was the driver of the van. When Appellant answered affirmatively, Trooper Hershey noticed slurred speech, bloodshot, glassy eyes and the odor of alcohol. Trooper Hershey informed Appellant of his *Miranda* rights and the implied consent law, 75 Pa.C.S. § 1547, and advised him that the hospital would be drawing a sample of blood for treatment purposes. Appellant then requested that Trooper Hershey inform him of the results.

A few minutes after this encounter, hospital personnel drew a blood sample from Appellant for independent medical purposes. Trooper Hershey called the hospital laboratory a short time later and obtained the results, which indicated that Appellant had a blood alcohol content (BAC) of .267%.

On September 9, 1996, Appellant was arrested and charged with two counts of driving under the influence, 75 Pa.C.S. § 3731(a)(1) and (a)(4), and one count of failing to stop at a clearly marked stop line, 75 Pa.C.S. § 3323(b). The investigating officers subsequently obtained the formal written results of Appellant's BAC test through the issuance of a subpoena.

On December 9, 1996, Appellant filed an omnibus pre-trial motion, seeking suppression of the BAC test results. At the conclusion of a hearing held January 22, 1997, the motion was denied. After a bench trial, Appellant was convicted of all charges and sentenced to seven days house arrest and twenty-three months intermediate punishment, plus fines, costs and restitution. On April 1, 1998, the Superior Court affirmed the judgment of sentence. This Court granted allocatur on September 30, 1998.

In *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135, 141 (1994), this Court held that under the Fourth Amendment of the United States Constitution, "where an officer has probable cause to request a blood test pursuant to 75 Pa.C.S. § 3755(a), the failure to verbalize the request shall not bar the officer from obtaining the results of a medical purposes blood test without a warrant." Citing to the concurring opinion in *Riedel,* at 185–187, 651 A.2d at 142–143 (Zappala, J., concurring), Appellant argues on appeal to this Court that a different result follows under Article 1, Section 8 of the Pennsylvania Constitution.

Section 3755 reads as follows:

**§ 3755. Reports by emergency room personnel**

**(a) General rule.**—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under the influence of alcohol or a controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon the request of the person tested, his attorney, his physician or governmental officials or agencies.

**(b) Immunity from civil or criminal liability.**—No physician, nurse or technician or hospital employing such physician, nurse or technician and no other employer of such physician, nurse or technician shall be civilly or criminally liable for withdrawing blood or obtaining a urine sample and reporting test results to the police pursuant to this section or for performing any other duty imposed by this section.

No physician, nurse or technician or hospital employing such physician, nurse or technician may administratively refuse to perform such tests and provide the results to the police officer except as may be reasonably expected from unusual circumstances that pertain at the time of admission.

Section 3755 and the implied consent law, 75 Pa.C.S. § 1547,[1] comprise a statutory scheme which both implies the consent of a driver to undergo blood testing in certain circumstances and requires hospital personnel to release the blood test results at the request of, among others, a police officer.

Appellant asserts that the failure of Trooper Hershey to *request* that the hospital *perform* BAC testing under Section 3755(a), renders Trooper Hershey's subsequent warrantless acquisition of Appellant's BAC test result illegal under the Pennsylvania Constitution.[2]

■ Section 3755(a), by its plain language, requires *hospital personnel*, in cases where probable cause exists to believe that an emergency room patient has violated Pennsylvania's DUI statute, to take blood samples for BAC testing. There is *no* requirement in the statute that the BAC testing be conducted at the *request* of a *police officer*. The only requirement is the abstract requirement that "probable cause exists to believe a violation of Section 3731." If such "probable cause exists,"

1. Section 1547 provides:

    **(a) General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

    (1) while under the influence of alcohol or a controlled substance or both. . . .

2. The dissenting opinion asserts that the opinion announced today is in direct contravention of *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), due to the absence of an *"Edmunds"* analysis. *Edmunds* imposes no such requirement on *this Court*, but instead, sets forth the briefing requirements for *litigants* seeking this Court's review of claims based exclusively on the Pennsylvania Constitution. *Id.*, 586 A.2d at 895.

then hospital personnel must take blood samples for BAC testing.[3] This, however, is not a case where a blood sample has been taken pursuant to Section 3755. It is undisputed that Appellant's BAC test was conducted for independent medical purposes. There was no request by Trooper Hershey that a BAC test be performed, nor did hospital personnel perform the BAC test as a result of any perceived duty arising out of the abstract probable cause requirement in Section 3755.

■ Accordingly, as Appellant's BAC test was not conducted pursuant to Section 3755(a), the release of the result of the BAC test at the request of Trooper Hershey was not authorized by Section 3755(a), nor is there any other statutory basis for releasing the result. The question then becomes whether the release of the result violates Article 1, Section 8 of the Pennsylvania Constitution.

■ As stated in *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308, 314 (1992): "Article 1, Section 8 has an identity and vitality that is separate and distinct from that of the Fourth Amendment.... A state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution." The protection provided by Article 1, Section 8 extends to areas where an individual has a reasonable expectation of privacy. *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980). The right to privacy extends to medical records of patients. *See generally In re June 1979 Allegheny County*

3. Section 3755(a) is, to say the least, inartfully drafted. For some vague and curious reason, the legislature has required a probable cause determination without specifying who is to make such determination, or how such an abstract requirement is to be met. The request of a police officer, based on probable cause to believe a violation of Section 3731, would seem to satisfy the probable cause requirement and therefore mandate that hospital personnel conduct BAC testing. Likewise, a determination by hospital personnel familiar with Section 3755(a), that probable cause existed to believe that a person requiring treatment had violated Section 3731, would also seem to mandate that hospital personnel conduct BAC testing. However, neither of those scenarios occurred in the instant case.

*Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 76–78 (1980); *Denoncourt v. Commonwealth of Pennsylvania, State Ethics Commission,* 504 Pa. 191, 470 A.2d 945, 947–950 (1983).

■ As stated in the *Riedel* concurrence:

> The implied consent provision of 75 Pa.C.S. § 1547(a)(1) does not eliminate the need to obtain a warrant to seize medical records, but only to request and conduct chemical tests. The reason for this is obvious. Due to the evanescent nature of the evidence of blood alcohol content, there is an immediate need to obtain samples of blood for testing. When blood samples have been drawn for medical purposes and the results of blood alcohol content tests are part of a patient's medical record, the evidence will not have dissipated during the time that application for a search warrant is being made.

651 A.2d at 135.

Thus, the release of the result of Appellant's BAC test, taken for independent medical purposes and not pursuant to Section 3755(a), to Trooper Hershey without a warrant and in the absence of exigent circumstances, violated Article 1, Section 8 of the Pennsylvania Constitution. Accordingly, the BAC test results should have been suppressed.[4]

The order of the Superior Court which affirmed the order of the common pleas court is reversed.

NIGRO, Justice, files a concurring opinion.

CASTILLE, Justice files a dissenting opinion in which SAYLOR, Justice, joins.

---

4. The dissent concludes that today's decision will force citizens to face "more intrusive" government conduct in the form of a "court-ordered freedom to have a blood sample withdrawn by a hypodermic needle *twice* ....", dissent at 631 (emphasis in original). We do not share in this conclusion. Today's decision only requires that police officers request that a BAC test be conducted on any blood withdrawn by the hospital for independent medical purposes, or in the absence of such, that blood be withdrawn for the sole purpose of conducting a BAC test.

NIGRO, Justice, Concurring.

Today the majority concludes, consistent with Justice Zappala's concurring opinion in *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135 (1994), that under Article I, Section 8 of the Pennsylvania Constitution, the police cannot obtain the results of a blood test pursuant to 75 Pa.C.S. § 3755(a) without a search warrant if: (1) the police did not request that a blood sample be taken for purposes of determining the BAC of the defendant; and (2) the emergency health care provider(s) who performed the blood test did so for purely medical reasons, rather than out of a perceived duty to do so under Section 3755(a). I believe that the limited result reached by the majority and, perhaps more importantly, the analysis employed in order to reach that result, does damage to the settled methodology this Court has used to analyze state constitutional provisions in comparison to their federal counterparts to determine whether the former provide additional protections which the latter do not. *See, e.g., Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991)(setting forth four-pronged methodology for state constitutional analysis). In my view, *Riedel* should be expressly overruled, and this Court should find that the warrantless police seizure of Appellant's blood test results was invalid under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Accordingly, I concur in the result reached by the majority.

The *Riedel* Court concluded that the warrantless police seizure of Riedel's blood test results did not violate the Fourth Amendment's proscription against unreasonable searches and seizures because the seizure was executed in accordance with 75 Pa.C.S. § 3755(a). While I recognize that *Riedel* is a decision of somewhat recent vintage, I believe that it was wrongly decided because the blood test at issue in that case was performed for purely medical reasons, and not in response to any request on the part of a police officer or in accordance with a perceived statutory duty to do so pursuant to Section 3755(a). Based on its own terms, Section 3755(a) applies only in limited situations where emergency health care providers

draw a blood sample based on a police request or a perceived statutory obligation to do so in order to assist the police in procuring evidence for a possible future DUI prosecution. Thus, it seems clear that the *Riedel* Court erred in relying on Section 3755(a) in upholding the police seizure of Riedel's blood test results. Assuming that the *Riedel* Court had instead found Section 3755(a) inapplicable to the warrantless police seizure of Riedel's blood test results, it seems only logical that the Court would also have found that the seizure violated the Fourth Amendment. In fact, the *Riedel* Court said as much in dictum, stating: "We recognize that in the absence of the implied consent scheme [i.e., Section 3755(a) ], the actions of Trooper Davis would constitute an unreasonable search and seizure." 539 Pa. at 182, 651 A.2d at 141.

Importantly, the operative facts in the instant appeal are practically identical to those presented in *Riedel.* Nevertheless, the majority, without expressly overruling *Riedel,* concludes that Section 3755(a) is inapplicable to the warrantless police seizure of Appellant's blood test results, and consequently finds the seizure violative of Article I, Section 8 of the Pennsylvania Constitution. In addition, by quoting a passage from *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992), concerning the distinct identity and vitality of Article I, Section 8 in comparison to its federal counterpart in the Fourth Amendment, the majority incorrectly implies that the applicability of Section 3755(a) to a warrantless police seizure of blood test results depends on whether the defendant decides to challenge the seizure based on federal or state constitutional grounds. It most decidedly does not. Rather, the applicability of Section 3755(a) in any particular case depends solely on the facts surrounding the performance of the blood test and the subsequent police seizure of the blood test results.

As the above discussion indicates, I would expressly overrule *Riedel,* as I believe that the facts presented in that case do not support the applicability of Section 3755(a). Likewise, based on the practically identical facts presented in the instant appeal, I believe that 75 Pa.C.S. § 3755(a) is not applicable to the warrantless police seizure of Appellant's blood test results.

Thus, I would conclude that the unauthorized, warrantless police seizure of Appellants blood test results violated both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

CASTILLE, Justice, Dissenting.

The majority would hold that Article I, § 8 of the Pennsylvania Constitution commands, where Fourth Amendment jurisprudence does not, that the results of a medical purposes blood alcohol content (BAC) test performed by a hospital on a Pennsylvania driver, who by operation of law is deemed to have impliedly consented to have his blood tested if there is probable cause to believe that he was driving while impaired, cannot simply be requested by police unless or until they first secure a search warrant. In my view, such a warrantless police request is just as reasonable, and hence as constitutionally permissible, under Article I, § 8 as it is under the Fourth Amendment. Furthermore, in light of the legislative implied consent scheme, I fail to see how impaired drivers could be said to have a reasonable expectation of privacy in their BAC test results. Because I cannot accept the majority's unsupported state constitutional conclusion to the contrary, I respectfully dissent.

Six years ago, this Court unanimously held that, in light of the implied consent provisions in Title 75, the Fourth Amendment did not require police to secure a warrant in these same circumstances. *Commonwealth v. Riedel*, 539 Pa. 172, 179, 184–85, 651 A.2d 135, 139, 142 (1994).[1] Although the constitutional challenge raised in *Riedel* sounded under the Fourth Amendment alone, this Court's approval of warrantless police requests for medical purposes BAC test results was not based upon any existing United States Supreme Court case on the

1. Justice Zappala filed a concurring opinion, joined by then-Justice, now Chief Justice, Flaherty and Justice Cappy, agreeing with the majority opinion's Fourth Amendment analysis, but *sua sponte* raising and then addressing an issue not presented in the case. Specifically, without benefit of adversarial presentation on the matter, the concurrence stated that, if a state constitutional claim had been presented, it would have ruled that the warrantless police request violated Article I, § 8.

same matter. Indeed, to this day, that Court has not addressed this particular issue. Nor was the result in *Riedel* commanded by any unique aspect of the Fourth Amendment that distinguishes it from Article I, § 8.

Instead, the *Riedel* Court simply acknowledged and applied certain bedrock principles of search and seizure jurisprudence: *i.e.*, that searches without a warrant are generally unreasonable, but exceptions to the warrant requirement exist, including actual and implied consent, where warrantless searches have been deemed reasonable. 539 Pa. at 178–79, 651 A.2d at 139. This Court's construction of Article I, § 8 is **identical** in this particular instance, *i.e.*, we recognize a preference for warrants, while also recognizing the reasonableness of warrantless searches in some circumstances, including consent cases. *Commonwealth v. Cleckley,* 558 Pa. 517, 520–21, 738 A.2d 427, 429 (1999); *Commonwealth v. Cass,* 551 Pa. 25, 53–54, 709 A.2d 350, 364 (1998) (plurality opinion); *Commonwealth v. Williams,* 547 Pa. 577, 585–86, 692 A.2d 1031, 1034–35 (1997); *Commonwealth v. Kohl,* 532 Pa. 152, 166–67, 615 A.2d 308, 315 (1992). Indeed, as with so much other Article I, § 8 search and seizure jurisprudence, this Court's approach to warrantless searches has largely followed the analytical construct articulated and developed in Fourth Amendment cases.

The *Riedel* Court merely held that the implied consent provision of the Motor Vehicle Code, 75 Pa.C.S. § 1547(a), and its emergency room counterpart, *id.* § 3755(a), justified warrantless requests by police for the analysis results of BAC tests of blood drawn for medical treatment purposes. The Court concluded that those provisions comprised a "statutory scheme that implies the consent" of a driver to undergo chemical blood testing when "reasonable grounds," which the Court equated with "probable cause," existed to believe that the driver had operated his vehicle while under the influence of alcohol or a controlled substance. 539 Pa. at 179–80, 651 A.2d at 139–40.[2] Under this scheme, the "litmus test" was

2. Section 1547 provides that any person who drives, operates or is in actual physical control of a motor vehicle in this Commonwealth "shall be deemed to have given consent to one or more chemical tests of

probable cause, and the *Riedel* Court could not "discern any reason for requiring a police officer to obtain a search warrant in these circumstances." *Id.* at 182, 651 A.2d at 140.

In this regard, the *Riedel* Court employed a balancing test, contrasting the limited "search" of the hospital's records occasioned by a request for the BAC test results, which involves "only a minimal intrusion into [the driver's] privacy;" with the substantial physical intrusion occasioned by the "initial taking," *i.e.*, the actual blood sample withdrawal itself. *Id.* at 182, 651 A.2d at 140–41, quoting *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086, 1092 (1988). In addition, the *Riedel* Court specifically rejected the very argument now resurrected and deemed *per se* dispositive by today's majority, that since "there was no danger that [the driver's] blood alcohol content would evanesce because it was preserved by the medical purposes blood test" therefore the warrantless request for the results by police was unreasonable:

> [C]ontrary to appellant's insistence, the implied consent scheme adopted by our legislature is designed to do more than just preserve evanescent evidence. As stated above, the scheme is designed to facilitate prosecution of chemically impaired drivers.

539 Pa. at 182–83, 651 A.2d at 141. *See Kohl, supra*, 532 Pa. at 168, 615 A.2d at 316. (Commonwealth has "a compelling interest in protecting its citizens from the dangers posed by drunk drivers"). Because the initial taking of blood was lawful and the minimal intrusion occasioned by the later

breath, blood or urine for the purposes of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe" that the person was under the influence of alcohol and/or a controlled substance. 75 Pa.C.S. § 1547(a). A driver who refuses the BAC test faces an automatic one-year suspension of driving privileges. *Id.* § 1547(b). The emergency room provision similarly states that, if there is probable cause to believe that a person driving, operating or in actual physical control of a motor vehicle involved in an accident, who requires medical treatment in a hospital emergency room, violated the DUI laws, "the emergency room physician or his designee shall promptly take blood samples" and have the samples tested. 75 Pa.C.S. § 3755(a). Those test results must be released, upon request, to the person tested, his attorney, his physician, or government officials or agencies. *Id.*

warrantless request comported with the purpose of the implied consent scheme, the request for the BAC results was found to be reasonable. Hence, the *Riedel* Court rejected the Fourth Amendment claim.

Jurisprudentially, one would expect the majority's state constitutional analysis to begin with a discussion of *Riedel's* rationale, since it is the case most relevant to the equivalent state constitutional issue now presented to this Court for the first time. But the majority baldly rejects *Riedel* as a matter of state constitutional jurisprudence without so much as acknowledging its reasoning, much less explaining why that reasoning, unanimously deemed sound under the Fourth Amendment, is somehow at odds with Article I, § 8. The practical effect of the majority's inability to articulate exactly how *Riedel's* balanced constitutional analysis is mistaken is to mandate a far more intrusive medical procedure grounded solely in the majority's highly idiosyncratic view of the state constitution.

The right of privacy protected by the Fourth Amendment exclusionary rule and, much more recently, by the state exclusionary equivalent, Article I, § 8, has been most simply and eloquently expressed in the notion that, at least as against the government, there is a "right to be let alone-the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). But, under the majority's state constitutional pronouncement here, citizens will face more intrusive, not less intrusive, conduct by the government. Since police will no longer be able to obtain the results of any medical purposes BAC test without a warrant, and since police will rarely know for certain whether the hospital's withdrawal of blood from a suspected drunken driver was for medical purposes rather than pursuant to the requirements of § 3755, the most practical course for investigating officials will be to **always** order an additional, "legal purposes" blood withdrawal and test—even if police know, or reasonably can assume, that one blood sample has already been withdrawn by the hospital. Such a police request is

constitutionally permissible under the implied consent provisions. *See Kohl, supra,* 532 Pa. at 166, 615 A.2d at 315. The majority seems to agree with this very proposition in footnote 2 of its opinion. Thus, under the majority's view of what the right of "privacy" requires of police, suspected drunken drivers can revel in their court-ordered freedom to have a blood sample withdrawn by a hypodermic needle **twice:** once if needed for medical treatment purposes and once, just in case, for legal investigative purposes. The thoroughly inebriated driver here,[3] who was stuck with a needle just once, no doubt will be happy with the windfall of escaping his just punishment, since the police could not foresee this holding, particularly in light of the clear language of *Riedel.* But it is doubtful that future impaired drivers, who will have blood withdrawn twice, and will receive no such windfall, will feel much consolation in learning that the redundant withdrawal of their blood is the embodiment of the majority's curious view of what it means to have an **enhanced** right to be "let alone." The majority's anachronistic approach, which apparently assumes that a suppression ruling in favor of a criminal defendant is always the best way to protect the general right to privacy, has led it to lose sight of the broader, actual constitutional value at issue here.

In addition to simply ignoring the constitutionally balanced reasoning in *Riedel,* the majority opinion here lacks any analysis under *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). Under this Court's jurisprudence established by *Edmunds,* it is "essential" that a court undertaking an independent analysis of Article I, § 8 consider "at least" four specific areas: the text of the Pennsylvania constitutional provision; the history of the provision, including Pennsylvania case law; related case law from other states; and policy considerations unique to Pennsylvania. *Id.* at 390–91, 586 A.2d at 895. If a government practice that this Court unanimously and recently concluded was permissible under the Fourth Amendment truly offended Article I, § 8 it should not

**3.** Appellant's BAC was .267%.

be difficult to articulate why that is so pursuant to *Edmunds.* But the majority is deafeningly silent on this "essential" point.

The absence of an *Edmunds* analysis perhaps results from the fact that the majority merely tracks the *Riedel* concurring opinion, which itself failed to engage in an *Edmunds* analysis. But the *Riedel* concurrence itself is a dubious source of state constitutional reasoning, not just because it lacks an *Edmunds* analysis, but also because of the procedural posture of that case. No Article I, § 8 question was presented in *Riedel.* The concurrence's prejudgment of the state constitutional question was offered entirely gratuitously, without the benefit of a case or controversy, much less an adversarial presentation addressing the *Edmunds* factors. Our system of jurisprudence, of course, proceeds upon the time-proven assumption that adversarial presentation in actual cases and controversies, rather than visceral reactions to academic questions discovered by the Court itself, produces the best and wisest decision-making. This is why we take pains to avoid, where possible, unripe questions, moot questions, advisory opinions, and dicta. Because the *Riedel* concurrence proceeded without the benefit of adversarial presentation or a case or controversy, it is, as a jurisprudential matter, inherently suspect at best, if not presumptively erroneous. The further lack of analysis by today's majority certainly does nothing to improve this glaring omission.

The *Riedel* concurrence's prejudgment of the issue has spawned a secondary evil that has infected this case as well. Although this case presents the actual case or controversy involving Article I, § 8 that was missing in *Riedel,* we still lack the benefit of an *Edmunds* analysis from appellant because, predictably enough, he simply relies upon the *Riedel* concurrence's prejudgment. In short, we are left with a situation where the majority would announce and establish a state constitutional proposition, distinct and different from this Court's recent, unanimous Fourth Amendment jurisprudence on the very same question, without this Court ever having analyzed it with regard to any remotely plausible basis for such a distinction, and without the majority ever bothering to

explain on its own how it is they arrived at their remarkable, contrary conclusion. Such has become the state of affairs that passes for this Court's unique—and it is certainly that if nothing else—Article I, § 8 jurisprudence.

I am particularly wary of novel expansions of Article I, § 8 that are unaccompanied by an *Edmunds* analysis. A novel and unexplained holding under Article I, § 8 is a practice that permits a jurisprudence of contrariness or, even worse, arbitrariness. Such an unexplained holding is at least as likely to be a mere expression of a Court majority's personal disagreement with contrary Fourth Amendment jurisprudence, dressed in state constitutional garb in order to avoid correction by the United States Supreme Court, as it is to be an affirmative expression of what the state provision uniquely means and embraces. By previously requiring that novel state constitutional claims be considered in light of our actual experience with Article I, § 8 and with the experience of this Court and other courts with similar search and seizure questions, and with policy concerns "unique" to our jurisprudence, the *Edmunds* construct at least provides some semblance of a principled constitutional analysis of a particular issue. The inability to even begin to defend a novel holding pursuant to *Edmunds,* on the other hand, betrays a total disregard for the experience of other courts as well as for this Court's own considered experience and, in my view, raises a presumption that the state constitutional holding is erroneous.

Nothing in the majority opinion rebuts that presumption here. Rather than employ *Edmunds,* or account for *Riedel,* the majority simply notes that Article I, § 8 has a "separate and distinct" identity from the Fourth Amendment. The majority then declares that the "protection" of Article I, § 8 extends to medical records of patients, which, the majority apparently concludes, would include BAC test results. But, as this Court has repeatedly recognized, such general observations about Article I, § 8 command no particular result. *See Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655, 660 (2000) (fact that this Court has accorded greater protections under Article I, § 8 in some circumstances, "does not command a

reflexive finding in favor of any new right or interpretation;" "we should apply the prevailing standard 'where our own independent state analysis does not suggest a distinct standard' "), *quoting Cleckley, supra,* 558 Pa. at 525, 738 A.2d at 431. The majority opinion's naked conclusion says nothing about why the balancing approach in *Riedel,* which recognized the preference for warrants but weighed against that preference the same circumstances implicated by the probable cause-based police request here, must be ignored under the state constitution. Nor does the majority's unexceptional proposition explain why its warrant requirement should be deemed a more reasonable practice, much less a practice compelled by the unique nature, history, and policy associated with Article I, § 8.

In determining the scope of protection afforded under Article I, § 8 this Court employs the very same "reasonable expectation of privacy" test that the United States Supreme Court employs to determine the Fourth Amendment's sweep. "That test requires a person to (1) have established a subjective expectation of privacy and (2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable and legitimate." *Commonwealth v. Gordon,* 546 Pa. 65, 71, 683 A.2d 253, 256 (1996). *See also Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993); *Commonwealth v. Blystone,* 519 Pa. 450, 463–64, 549 A.2d 81, 87 (1988), *aff'd, Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). With respect to the particular issue here, the *Riedel* Court specifically held that a defendant has "a reasonable expectation of privacy in his medical records" under the Fourth Amendment. There is nothing in the Article I, § 8 jurisprudence, much less in the majority opinion, to suggest that Article I, § 8 affords a different or broader privacy protection in the context of medical records beyond that recognized under the Fourth Amendment in *Riedel.*

The majority supports its declaration that the distinct Pennsylvania right of privacy under Article I, § 8 applies to medical records by citations to two cases, tellingly with no accompanying legal analysis: *In re June 1979 Investigating*

*Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980), and *Denoncourt v. Commonwealth of Pennsylvania, State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983). The second case, *Denoncourt,* is a plurality opinion and therefore lacks precedential value. The first case, *In re June 1979,* never so much as cited Article I, § 8. Instead, that case spoke of an apparently coextensive state and federal "privacy interest" patients have in their medical records. Citing cases including *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Court noted that, although the "sources and limits" of the federal privacy right "may be disputed," there could be "no doubt" that the federal constitution "guarantees a right to privacy." 490 Pa. at 150–51, 415 A.2d at 77. The equivalent Pennsylvania guarantee was found not in Article I, § 8 but in Article I, § 1, which provides, in pertinent part, that "All men .... have certain inherent and indefeasible rights, among which are those ... of acquiring, possessing, and protecting property and reputation....." 490 Pa. at 151, 415 A.2d at 77. Notably, the Court cited as "an additional and major constitutionally protected privacy interest .... the right of the individual to be free of unreasonable government surveillance and intrusion," an interest that "finds its protection in the Fourth Amendment." *Id.* at 151 n. 9, 415 A.2d at 77 n. 9. But the Court still did not cite Article I, § 8 much less suggest that it was the source of a different or greater state privacy right in medical records. Finally, it is also significant that the Court **approved** of the warrantless procedure at issue there—*i.e.,* a grand jury subpoena of the medical records— noting that it constituted "a limited invasion of privacy" which was "justified under the circumstances." *Id.* at 152 & n. 11, 415 A.2d at 78 & n. 11.

Similarly, when *Riedel* spoke of a "substantial privacy interest" in medical records, 539 Pa. at 178, 651 A.2d at 138, that Fourth Amendment analysis never endorsed the notion that the right was different or greater under the Pennsylvania Constitution. To the contrary, the *Riedel* majority cited federal and state cases interchangeably, which again suggests

that the right is coextensive and not enhanced. More importantly, immediately after noting that both the Third Circuit and the courts of the Commonwealth recognized the right, *Riedel* emphasized that "this privacy right is not inviolate," citing as an example the warrantless procedure approved in the *In re June 1979* case. 539 Pa. at 178, 651 A.2d at 138. In short, the *In re June 1979* case does not remotely suggest that there is a different and greater state constitutional right to privacy in medical records in the situation *sub judice.*

Nor can I discern anything in this Court's twenty year-old Article I, § 8 jurisprudence [4] that would support a departure from *Riedel's* Fourth Amendment analysis. The leading cases attempting to articulate in principled fashion the manner in which Article I, § 8 provides for different and greater privacy rights explain the divergence as arising from a perception that the exclusionary rule has come to serve a different purpose under the Pennsylvania Constitution than under the Fourth Amendment. As most succinctly stated in *Williams, supra:* "Article I, Section 8 often provides greater protection since the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct." 547 Pa. at 591, 692 A.2d at 1038. *See also Glass, supra,* 754 A.2d at 662 n. 11; *Edmunds, supra,* 526 Pa. at 396, 586 A.2d at 898.

This exclusionary rule-based divergence traced in the *Edmunds* line makes the majority's conclusion here even more

4. Although this Court had earlier recognized that the state constitution was a **potential** source for greater or different rights in search and seizure cases, the first time we actually departed from a United States Supreme Court precedent on Article I, § 8 grounds was in *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (rejecting *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)). Prior to that, Article I, § 8, when cited, was treated as coterminous with the Fourth Amendment. *E.g.*, *Commonwealth v. White*, 459 Pa. 84, 89–90, 327 A.2d 40, 42 (1974); *Commonwealth v. Platou*, 455 Pa. 258, 259 n. 2, 312 A.2d 29, 31 n. 2 (1973), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). Notably, the Court in *DeJohn*, unlike the majority here, explained at length the reasons for departing from the federal precedent, including a discussion of case law from other jurisdictions and the views of commentators.

indefensible. The *Riedel* Court did not approve of the warrantless police request for the medical purposes BAC test results there because disapproval would not serve the deterrence rationale of the exclusionary rule. Instead, it approved the practice because, on balance, it was a reasonable accommodation in light of the implied consent licensing provisions which were "designed to facilitate prosecution of chemically impaired . drivers," and in light of the limited intrusion the request for test results occasioned. Those factors—the existence and purpose of the legislation, the limited nature of the intrusion, and the reasonableness of the practice—are no less crucial factors under any state constitutional analysis. The *Edmunds* line, including its articulation of the reason for Article I, § 8's divergence from the Fourth Amendment, certainly cannot justify the majority's unexplained departure from *Riedel.*

The majority's rejection of *Riedel* further contradicts actual Article I, § 8 jurisprudence because it simply ignores the fact that the "distinct" right to privacy applicable in Pennsylvania only for the past twenty years has never been the absolute that the majority apparently believes it to be. The majority concludes that, since the BAC test here was not performed pursuant to police request or pursuant to the emergency room statute, it automatically follows that the results could not lawfully be requested absent exigent circumstances or a warrant. But Article I, § 8's right to privacy " 'is not an unqualified one; it must be balanced against weighty competing private and state interests.' " *Cass, supra,* 551 Pa. at 53–54, 709 A.2d at 364, *quoting Stenger v. Lehigh Valley Hosp. Center,* 530 Pa. 426, 434, 609 A.2d 796, 800 (1992). *Accord Williams, supra.*

Furthermore, in point of fact, this Court has specifically approved of a flexible, balancing approach under Article I, § 8, particularly in circumstances like this one, where the question involves the warrant requirement and diminished expectations of privacy. For example, in *Williams, supra,* this Court held that parolees had no greater protection from warrantless searches under Article I, § 8 than under the

Fourth Amendment. In so holding, the Court noted, *inter alia*, the parolee's diminished expectation of privacy arising from his parole status and then balanced that diminished expectation against the "government interests involved in granting parole and supervising parolees." 547 Pa. at 585–86, 692 A.2d at 1035–36. Likewise, in *Cass, supra*, this Court balanced the limited expectation of privacy that public school students have while in the school environment against the interest of the school district in conducting general searches of student lockers in order to maintain a safe and secure environment for all students. The Court concluded that, given the special concerns attendant in the school environment, warrantless general searches, which need only be based upon reasonable suspicion, were reasonable under Article I, § 8. *Accord, Denoncourt, supra*, 504 Pa. at 199, 470 A.2d at 948 (plurality opinion by Flaherty, J.) (in Pennsylvania privacy cases, "there is implicit a balancing of an individual's right to privacy against a countervailing state interest which may or may not justify, in the circumstances, an intrusion on privacy"); *In re June 1979, supra*, 490 Pa. at 152 n. 11, 415 A.2d at 78 n. 11 (limited invasion of privacy occasioned by grand jury subpoena for medical records justified "under the circumstances").

Thus, this Court's historical search warrant jurisprudence under Article I, § 8 is indistinguishable from the Fourth Amendment balancing analysis employed in *Riedel*, and stands in sharp contrast to the majority's unexplained contrary conclusion. As the *Riedel* Court noted, the intrusion involved in a simple oral request for BAC test results is minimal, *i.e.*, it is "far less intrusive" than the actual withdrawal of blood and administration of a test which had already occurred. In addition, the existence of the implied consent scheme obviously diminishes any expectation of privacy a properly suspected drunken driver could have had in the BAC test results. Thus, even if a particular test was not administered for "legal purposes," the fact remains that the statute implies the consent of suspected impaired drivers to such testing, and that fact affects the driver's expectations. Given that reality, the

distinction between blood withdrawn for "medical purposes" or blood withdrawn for "legal purposes" adds nothing to the reasonableness of a driver's expectation that his BAC test results would not be disclosed. Such a driver, who may have had no idea whether a blood sample was taken from him for either medical purposes or for legal purposes, can harbor no "legitimate" expectation that the results would not be disclosed to investigating officers acting with probable cause.

Furthermore, the request does not involve a general search through the driver's medical records, but is limited to disclosure of the BAC test results: it "does not grant police officers carte blanche to invade the privacy of an individual's medical records." *Riedel*, 539 Pa. at 182–83, 651 A.2d at 140–41. In addition, the request does not involve matters affecting confidential communications or the doctor/patient privilege. On the other hand, the government interest at issue, *i.e.*, to preserve evanescent evidence and to "facilitate prosecution of chemically impaired drivers," and thereby protect the public, is a "compelling" and substantial one. *Kohl, supra*, 532 Pa. at 168, 615 A.2d at 316.

To the factors articulated by the *Riedel* Court, I would add the following points demonstrating the reasonableness of the warrantless request at issue here. As I have noted earlier, a simple request for the results of a medical purposes BAC test is far less intrusive than a request that a second blood sample be taken and tested—a practice I believe plainly authorized by the implied consent scheme and, as a practical matter, required by the majority's approach. The decidedly lesser intrusion of a request for the results, which spares the driver multiple drawings of blood, unquestionably is reasonable. Finally, requiring a warrant in these circumstances would do little to further the driver's right of "privacy." The "search" at issue here involves a hospital's disclosure of a single item, the driver's BAC test results. It is not a search of the driver's home, person, or effects. In fact, the police here did not actually "search" the driver's medical records. Instead, it was the hospital that reviewed its file, upon police request, and then provided only the results of the BAC test and nothing

further to the police officers. Thus, the officers had no access to other arguably confidential test results or physicians' notes. Neither the driver's person nor his possessions are the subject of the request; instead it is the BAC results in the possession of the hospital, a third party. In such an instance, whatever residual privacy interest the driver retains in the test results is more than adequately protected by the ability to later mount a court challenge for lack of probable cause if an arrest arises in a particular matter.

In summary, I see nothing in the text, case history, or policy concerns unique to Article I, § 8 that remotely justifies departing from this Court's balanced, Fourth Amendment analysis in *Riedel*. Accordingly, I would hold that the approach under Article I, § 8 is controlled by *Riedel*. Under that analysis, the blood alcohol test results were properly admitted. Therefore, I respectfully dissent.

SAYLOR, Justice, joins this dissenting opinion.