**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Richard LLOYD, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 8, 2008.

Filed May 14, 2008.

Patrick J. Connors, Media, for appellant.

Georg M. Green, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: BOWES, DONOHUE, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Richard Lloyd appeals the judgment of sentence entered on January 10, 2007, in the Court of Common Pleas of Delaware County, following his bench-trial conviction for driving under the influence of alcohol (DUI-alcohol),[1] driving while operating privilege is suspended or revoked (DUI-related),[2] aggravated assault,[3] resisting arrest,[4] fleeing and eluding the police,[5] and possession of a controlled substance (cocaine).[6] Upon review, we affirm.

¶ 2 The facts of this case, as stipulated by the parties, are as follows: In the early morning hours of February 26, 2006, shortly after midnight, an unidentified woman in an apartment at 322 Woodlawn Avenue in the Borough of Collingdale, Delaware County, made a 911 call, which she cut short due to a "problem." Officer Frank Galbraith of the Collingdale Police Department responded to the scene, and he observed a dark-colored pickup truck leaving the area. The truck had magnet

1. 75 Pa.C.S.A. § 3802.

2. 75 Pa.C.S.A. § 1543.

3. 18 Pa.C.S.A. § 2702(a)(3).

4. 18 Pa.C.S.A. § 5104.

5. 75 Pa.C.S.A. § 3733.

6. 35 P.S. § 780–113(a)(16).

signs on its side that read, "Lloyd Roofing." Thereafter, Officer Galbraith spoke with Carol Bytheway, the complainant and tenant of the apartment, who indicated that Appellant was intoxicated in her apartment, that he was causing problems, and that she did not want him to return.[7] Ms. Bytheway also told Officer Galbraith that Appellant had just left in his pickup truck. After receiving this information, Officer Patrick Crozier, also of the Collingdale Police Department, and Officer Jonathan Ross, of the Sharon Hill Police Department, began a vehicular search of the area to find Appellant.

¶ 3 Officer Ross located the pickup truck driving in the area of Bartram Avenue and Lafayette Avenue in Collingdale. In turn, Officer Ross activated his police cruiser's lights and sirens and attempted to initiate a traffic stop of the pickup truck. After first pulling over, the pickup truck sped away, and traveled eastbound on Bartram Avenue. The pickup truck traveled through two intersections, failing to stop for posted stop signs. In the midst of the chase, Officer Crozier traveled westbound on Bartram Avenue to intercept the pickup truck, whereupon the pickup truck swerved into Officer Crozier's lane of travel, forcing Officer Crozier to swerve onto the sidewalk in order to avoid a head-on collision. While turning his police cruiser around to pursue the pickup, Officer Crozier observed the pickup truck nearly collide head on with Officer Galbraith's cruiser.

¶ 4 After the chase continued for several more blocks, the police observed Appellant exit the pickup and flee the scene on foot. The police continued to chase Appellant on foot, while advising him that he was under arrest. The police forced Appellant to the ground, whereupon he continued to flail his arms and legs. Thereafter, the police "tasered" Appellant and took him into custody. While Appellant was in police custody, Officer Crozier noted a strong odor of alcohol emanating from Appellant's person, and he observed that Appellant had bloodshot eyes, a staggering gait, and slurred speech. Due to these facts, the police suspected that Appellant was intoxicated and informed him that he would be charged with DUI-alcohol. Officer Crozier read Appellant warnings gleaned from the Implied Consent Law, 75 Pa.C.S.A. § 1547, but he refused to submit to a blood alcohol content (BAC) test. A search of Appellant's person incident to his arrest revealed two bags of cocaine in his jacket pocket.

¶ 5 After taking Appellant into custody, the police transported Appellant to Fitzgerald Mercy Hospital for medical treatment for injuries sustained during the course of his arrest. During the course of treatment, medical personnel at the hospital drew blood from Appellant pursuant to treatment protocol.[8] The hospital determined Appellant had a BAC level of .25% at the time he was driving. An arrest warrant was later issued, and the Delaware County District Attorney's Office obtained the results of the BAC test via a subpoena to the hospital for Appellant's medical records.

¶ 6 Appellant filed a motion to suppress the evidence of the BAC test obtained via the subpoena, asserting that a warrant was required to obtain the results of the BAC test due to the fact that the blood test was

---

7. Officer Galbraith was familiar with Appellant and his vehicle due to his investigation of a domestic dispute 911 call involving Appellant and Ms. Bytheway that occurred approximately one month prior to the February 26, 2006 911 call.

8. Importantly, the police did not request medical personnel at the hospital to draw Appellant's blood.

administered pursuant to medical protocol, not at the behest of the police acting under their statutory authority to obtain such evidence. *See, e.g., Commonwealth v. Shaw*, 564 Pa. 617, 770 A.2d 295 (2001). The trial court agreed with Appellant's argument and granted his motion to suppress. Thereafter, the District Attorney's Office contacted Collingdale Police Sergeant Robert Adams and directed him to conduct an independent investigation into the matter. After reviewing the police reports of Appellant's arrest, Sergeant Adams authored an affidavit of probable cause and application for a search warrant. The reviewing magisterial district judge concluded that probable cause existed and issued a search warrant authorizing the police to obtain from the hospital Appellant's February 26, 2006 medical records, including the results of his BAC test. Appellant filed a second motion to suppress after the BAC test results were obtained *via* search warrant. The trial court denied Appellant's motion to suppress.

¶ 7 The case proceeded to a bench trial held on stipulated facts on January 9, 2007. On January 10, 2007, Appellant was found guilty of the above-named offenses and sentenced to an aggregate sentence of 36 to 72 months of incarceration in a state correctional facility, to be followed by 5 years of probation. Appellant filed a timely notice of appeal to this Court, and the trial court directed Appellant to file a concise statement of matters complained of on appeal. Appellant complied with the trial court's directive, and the trial court, in turn, authored an opinion that addressed the issues presented in his concise statement.

¶ 8 Appellant presents the following issues for our review:

  Whether the [trial court] erred in failing to suppress the fruits of the search warrant issued for [Appellant's] medical records where it was tainted by information obtained by way of an earlier improper subpoena for those same records[?]

  Whether the evidence was insufficient to sustain the conviction of Aggravated Assault where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] attempted by physical menace to put the police officer in fear of imminent serious bodily injury[?]

Appellant's brief, at 5.

¶ 9 Appellant claims first that the trial court erred in failing to suppress the fruits of the search warrant issued for Appellant's medical records. Our review of this issue is governed by the following standard:

We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. In reviewing the denial of a motion to suppress evidence, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the suppression court's findings of fact on a motion to suppress, this Court may reverse only when the legal conclusions drawn from those facts are erroneous. However, we are bound by the trial court's findings of fact only to the extent that they are supported by the record.

*Commonwealth v. Seilhamer*, 862 A.2d 1263, 1267 (Pa.Super.2004) (citation omitted).

¶ 10 We begin first with the observation that the record supports the factual findings of the trial court and, therefore, that this Court is bound by those factual findings. *Seilhamer,* 862 A.2d at 1267. We now turn to a consideration of the legal conclusions drawn by the trial court from those factual findings.

¶ 11 Preliminarily, we note the following:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. It must also be remembered that probable cause is based on a finding of the probability, not a prima facie showing of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause. [ ... ]. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for [ ... ] concluding that probable cause existed.

*Commonwealth v. Wilkinson,* 436 Pa.Super. 233, 647 A.2d 583, 585–86 (1994) (citations and quotation marks omitted).[9] Additionally, the propriety of the grant of a search warrant to an affiant must be judged solely upon the information before the district justice at the time of its issuance. *Id.,* 647 A.2d at 586 (citation and quotation marks omitted). Consequently, the magistrate's decision must be based on the four corners of the affidavit in support of the issuance of the warrant. *Id.,* 647 A.2d at 586 (citation and quotation marks omitted).

¶ 12 Essentially, Appellant asserts that Sergeant Adams' investigation to procure his medical records *via* search warrant (at the direction of the District Attorney's Office) was nothing more than a re-enactment of the previous investigation through Officer Crozier, which culminated in an improper subpoena of the medical records, leading to their suppression by the trial court. As such, Appellant argues that the search warrant was based on information tainted by the improper seizure of the medical records and was, therefore, invalid.

¶ 13 The arguments for both Appellant and the Commonwealth consist almost entirely of discussions of the "independent source doctrine." The "independent source doctrine" springs from the need to balance illegal police conduct against the need for juries to receive all probative evidence and permits the introduction of evidence at trial that was procured initially by illegal police conduct but is, nevertheless, supported by probable cause, independent of the misconduct, that is sufficient to support the issuance of a search warrant. *See Commonwealth v. Brundidge,* 533 Pa. 167, 175, 620 A.2d 1115, 1119–20 (1993).

¶ 14 We observe first that the facts of this case are not typical of a classic "independent source doctrine case." In such a case, the facts demonstrate generally that the police, suspicious of a particular criminal act, executed a warrant improperly or entered an area improperly without a warrant, and, in so doing, they obtain evidence of a second criminal act. *See, e.g., Brundidge,* at 176, 620 A.2d at 1119–20. Instead, the record indicates that, initially, the District Attorney's Office sought Ap-

---

9. This test is known as the "totality of the circumstances" test. *See Commonwealth v.* *Gray,* 509 Pa. 476, 503 A.2d 921 (1985).

pellant's medical records *via* subpoena pursuant to 75 Pa.C.S.A. § 3755(a) (regarding provision of hospital BAC test results to police without a warrant following motor vehicle accident). As the police failed to request that the hospital perform a BAC test on Appellant, this statute did not apply, and a search warrant was necessary to obtain Appellant's medical records. *Shaw*, at 624, 770 A.2d at 299.[10] Therefore, the trial court initially suppressed Appellant's medical records from the night of the incident because they were obtained improperly. *Id.*, at 624, 770 A.2d at 299.

¶ 15 Despite the fact that the conduct of the District Attorney's Office, *i.e.*, the improper exercise of its subpoena power, led to the suppression of Appellant's medical records by the trial court, it is clear that the "independent source doctrine" applied in this case so as to permit the admission of the evidence at trial. The essence of the "independent source doctrine" is to preclude the government from suffering excessive sanction as a result of the improper actions of its agents and to provide it with the opportunity to reassert its investigation properly through other constitutionally-acceptable means. *See, e.g., Murray v. United States*, 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Therefore, it is clear that, although the majority of "independent source doctrine" cases in this Commonwealth discuss initial *police* misconduct, the doctrine is no less applicable here, where the conduct of the District Attorney's Office, an arm of the government, led

to the initial tainting of the evidence in question. *Id.*, 487 U.S. at 542, 108 S.Ct. 2529 (discussing "independent source doctrine" *vis-à-vis* **government** conduct) (emphasis added).

¶ 16 Application of the doctrine applies the following two-prong consideration: (1) whether the decision to seek a warrant was prompted by what was seen as a result of the government misconduct; and (2) whether the magisterial district judge was informed at all of the information improperly obtained. *Brundidge*, at 176, 620 A.2d at 1119. The courts of this Commonwealth have limited application of the doctrine to those cases where the "independent source" is truly independent from the tainted evidence or the investigative team that engaged in the misconduct leading to discovery of the tainted evidence. *See, e.g., Commonwealth v. Ruey*, 854 A.2d 560, 566 (Pa.Super.2004) (*en banc*), *affirmed on other grounds*, 586 Pa. 230, 892 A.2d 802 (2006) (plurality). However, this is not to say that an impermeable barrier must be erected between the investigators that conducted the first improper investigation and those conducting the second investigation. *Id.*, 854 A.2d at 571. Rather, the salient question for an appellate court's review is whether and to what extent the government profited in their investigation from the initial violation, and whether the second warrant was secured by reference to the fruits of the previous error. *Id.*, 854 A.2d at 567. In other words, the question is whether a

---

10. We note that the trial court found that 75 Pa.C.S.A. § 3755(a) was not applicable in this case because the BAC test was not performed by the hospital at the direction of the police. However, by its terms, the statute applies only when an auto accident requiring hospitalization occurs. The facts indicate that there was not an auto accident requiring hospitalization in this case. Rather, Appellant was chased in his vehicle by the police, stopped, and fled on foot. After arrest, Appellant resisted arrest and was injured as a result. Appellant's hospitalization was due to injuries sustained when he resisted arrest and not due to an auto accident. Consequently, in addition to the trial court's conclusion, this statute was not applicable for the aforementioned reason. Nevertheless, we do not dispute the correctness of the trial court's initial suppression order.

warrant would have issued by the magistrate even absent the knowledge or evidence gleaned by that error. *Id.*, 854 A.2d at 567.

¶ 17 As explained above, the admissibility of the seized evidence turns upon whether the evidence would have been obtained independently of the initial illegal activity. *Ruey,* 854 A.2d at 564–65. In the present case, absent Appellant's medical records (including results of the BAC test), the police's investigation into the potential DUI arrest of Appellant consisted of little more than their own observations on the night of the incident. Further, as is often the case, the observations of Appellant's demeanor and behavior by the police at the scene of Appellant's arrest were, of themselves, adequate to support the probable cause suspicion that Appellant was driving under the influence of alcohol. *See, e.g., Commonwealth v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086, 1091 (1988). Consequently, had the police sought a search warrant for Appellant's medical records following the administration of the BAC test by the hospital, they would have been successful in their efforts.

¶ 18 Therefore, based upon our review of the record, we conclude that Sergeant Adams' decision to seek a search warrant was premised only upon information that had been observed legally by his colleagues on the night of the arrest and recorded in their reports and not based upon illegally-obtained information. *Murray,* 487 U.S. at 542, 108 S.Ct. 2529 (reviewing court must consider whether subsequent police decision to obtain warrant was based on information observed by police misconduct). It is true that Sergeant Adams' investigation retraced the steps of the previous investigation, but we decline the invitation to penalize Sergeant Adams for the comprehensiveness of the previous investigation, especially here, where there was nothing of substance added to his investigation or the search warrant application by virtue of the illegally-obtained BAC results. *Ruey,* 854 A.2d at 571. Likewise, it is evident from the search warrant application that no mention was made of the illegally-obtained BAC results to the magisterial district judge. *Id.,* 854 A.2d at 565; *see also Murray,* 487 U.S. at 542, 108 S.Ct. 2529.

¶ 19 Simply stated, the information provided to the magisterial district judge by Sergeant Adams on the application for the search warrant contained only those facts possessed by the police immediately upon Appellant's arrest, which, as stated previously, were sufficient to generate probable cause. *Hipp,* 551 A.2d at 1091. Accordingly, the record is clear that cause to search Appellant's medical records (and attendant BAC test results) would have existed despite the improperly-served subpoena and that, unquestionably, a warrant would have issued by the magisterial district judge absent the initial, illegal procurement of the medical records by the District Attorney's Office. *Ruey,* 854 A.2d at 567 (reviewing court must consider whether police "profited" from initial misconduct). Therefore, we are satisfied that the police did not violate Appellant's right against unreasonable searches and seizures by procuring the medical records through a proper search warrant after its initial suppression. *Murray,* 487 U.S. at 542, 108 S.Ct. 2529; *see also Brundidge,* at 176, 620 A.2d at 1119–20. As such, Appellant's argument fails.

¶ 20 Appellant argues next that the evidence was insufficient to sustain his conviction for aggravated assault. Our review of this issue is governed by the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at

trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001) (citations omitted).

¶ 21 The crime of aggravated assault is defined by 18 Pa.C.S.A. § 2702, which states, in pertinent part, the following:

(a) OFFENSE DEFINED.—A person is guilty of aggravated assault if he:

\* \* \*

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury[.]

\* \* \*

(c) OFFICERS, EMPLOYEES, ETC., ENUMERATED.—The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:

(1) Police officer.

¶ 22 Appellant asserts that the evidence was not sufficient to prove that he intended to place Officer Crozier in fear of imminent serious bodily injury. The facts found by the trial court indicate that Appellant swerved his vehicle toward Officer Crozier's vehicle in an attempt to hit his vehicle in a head-on collision. Clearly, this action demonstrates an attempt by physical menace to place Officer Crozier in fear of serious bodily injury while he was in the performance of his duty. *See, e.g., Commonwealth v. Burns*, 390 Pa.Super. 426, 568 A.2d 974, 977 (1990). Contrary to Appellant's argument, Appellant's intent to strike Officer Crozier can be drawn from the attendant facts and circumstances, *i.e.*, swerving toward and speeding at Officer Crozier's vehicle and forcing his vehicle off the road. *See Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa.Super.2006). Therefore, Appellant's argument fails.

¶ 23 As each of Appellant's arguments fail, we affirm the judgment of sentence of the trial court.

¶ 24 Judgment of sentence affirmed.