## Commonwealth v. Geary

C.P. of Fayette County, no. 1756 of 2000.

*Douglas Sepic,* for Commonwealth.
*Edward Bilik,* for defendant.

WARMAN, *J.,* September 19, 2001—This case is presently before the court on an omnibus pretrial motion filed by the defendant in the form of a motion to suppress defendant's medical records seized from University of Pittsburgh Medical Center, Pittsburgh, Pennsylvania.

## FACTS

At the time of the omnibus hearing it was agreed that the matter would be submitted to the court based upon the testimony introduced at the preliminary hearing. The court was provided with a transcript of the proceedings from the preliminary hearing and the facts set forth herein are based solely upon the preliminary hearing transcript in accordance with the agreement of the parties.

On August 20, 2000, at or about 4:30 p.m. the defendant was operating a 1991 Hyundai automobile on Quail Hill Road, a two-lane roadway, located in Bullskin Township, Fayette County, Pennsylvania. The weather was clear and sunny and no obstructions were located in the roadway. Winfield Charles Hissem, the only passenger, occupied the front passenger seat of the vehicle. Upon rounding a right-hand turn in the roadway, the defendant operated his vehicle onto the south berm causing him to lose control of the vehicle. The passenger side of the vehicle struck a large tree causing the vehicle to rotate clockwise ejecting the defendant from the vehicle onto the roadway. The passenger, Winfield Charles Hissem, sustained injuries which resulted in his death at the scene.

John Conyette, a neighbor, heard the crash, exited his home and observed the defendant sitting in the middle of the roadway approximately 30 feet from the vehicle. Mr. Conyette observed that the defendant appeared dazed and had to be helped off of the roadway. When Walter Rechenberg, a paramedic, arrived at the accident scene, the defendant was walking around. Rechenberg examined the defendant and applied a cervical collar to im-

mobilize his head and neck. The defendant was placed on a spine board immobilizing him from head to foot. Defendant was administered oxygen, I.V.s and prepared for transport by helicopter to the UPMC. The defendant admitted to being the operator of the vehicle and the paramedic observed an odor of alcohol on his breath. He noted that the defendant was conscious, concerned about the accident and very upset.

The prosecuting officer, Pennsylvania State Trooper James Aughinbaugh, arrived at the scene while the defendant was being treated in the ambulance. Trooper Aughinbaugh stepped into the ambulance and questioned the defendant. The defendant said he knew he should not have been driving and asked about the status of his friend. An examination of the interior of the vehicle revealed numerous cans of Budweiser beer, some empty and some unopened and still cold. Knowing that the defendant was to be transported to UPMC, Trooper Aughinbaugh made arrangements for Trooper Curt Reuter of the Finley Barracks to appear at UPMC. Neither officer advised the defendant regarding the implied consent law, 75 Pa.C.S. §1547, and neither requested that the defendant submit to a blood test to determine his blood alcohol content. Criminal charges including homicide by vehicle were filed by Trooper Aughinbaugh on August 20, 2000, prior to the defendant's release from UPMC and the defendant was taken into custody by Trooper Reuter.

While at UMPC, the only blood sample drawn from defendant was taken by hospital personnel for treatment purposes. No blood was drawn by the hospital pursuant to section 3755 of the Motor Vehicle Code.

Trooper Aughinbaugh called the Fayette County District Attorney's Office for assistance in an effort to obtain the UPMC laboratory blood results. In response thereto, an employee of the district attorney's office typed up a subpoena directed to UPMC. No hearing date had been set nor did the subpoena require that the test results be produced at a hearing. The subpoena merely required that the test results be released to Trooper Aughinbaugh. No search warrant or court order was obtained to require the release of the medical records and no probable cause to justify the production of records was established before an independent judicial officer.

As a result of the issuance of the subpoena by the district attorney's office, the laboratory results from UPMC were released to the Pennsylvania State Police. The UPMC laboratory results were then transmitted to Dr. Winnick of PC Lab in Pittsburgh for the purpose of converting the serum alcohol results to whole blood alcohol. The conversion to whole blood by Dr. Winnick indicated that the defendant had a blood alcohol content of .120 percent.

Upon receipt of the PC lab report, Trooper Aughinbaugh withdrew the original charges and on August 23, 2000, refiled the criminal complaint adding additional charges of driving while under the influence of alcohol, 75 Pa.C.S. §3731(a)(4)(i) and homicide by vehicle while driving under influence, 75 Pa.C.S. §3735(a).

## DISCUSSION

The defendant contends in his omnibus pretrial motion that under Article I, Section 8 of the Pennsylvania

Constitution, the police officer may not obtain the results of a blood alcohol test pursuant to 75 Pa.C.S. §3755(a) without a search warrant and without having requested that the blood alcohol test be performed.

It is undisputed that defendant's BAC test was conducted for independent medical purposes. Neither Trooper Aughinbaugh nor Trooper Reuter requested that the defendant consent to have blood drawn for the purpose of a blood alcohol test and neither officer requested that UPMC hospital personnel draw a sample of the defendant's blood for testing. Similarly, no blood was drawn by UPMC emergency room personnel pursuant to 75 Pa.C.S. §3755(a) as a result of any perceived duty arising out of the abstract probable cause requirement of said statute.

Section 3755(a) reads as follows:

"Section 3755. Reports by emergency room personnel.

"(a) General rule.—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe that a violation of section 3731 (relating to driving under the influence of alcohol or a controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be

applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon the request of the person tested, his attorney, his physician or governmental officials or agencies."

In accordance with the provisions of 75 Pa.C.S. §3755(a), a police officer may request that emergency room personnel take blood samples for testing from a person who requires medical treatment when probable cause exists to believe that the person has been operating a vehicle under the influence of alcohol. When such a request is made, the hospital personnel have an affirmative duty to obtain the blood samples and to transmit them for blood alcohol testing. The test results may then be released upon request of the officer.

The officers in the present case did not follow the statutory procedure to obtain blood samples from the defendant to determine the blood alcohol content of the samples. Instead, Trooper Aughinbaugh obtained the subpoena from the district attorney's office requiring that UPMC personnel release the medical records to the police. The "subpoena" did not require a witness to appear for a court proceeding but was used as an investigatory tool to obtain the defendant's medical records. Pa.R.Crim.P. 9016 (now 107) provides that "A subpoena in a criminal case shall order the witness named to appear before the court at the date, time and place specified and to bring any items identified or described." Thus, the proper use of a subpoena duces tecum is to direct a witness to appear with the records at a court proceeding.

In this case, no court proceeding was scheduled, no witness was directed to appear with the records, the subpoena merely directed the hospital personnel to release the records to the police. We find that the subpoena was utilized as an investigatory tool to accomplish the purpose of a search warrant without the necessity of judicial review and was, therefore, improper. We find the legal effect of the method utilized to obtain the defendant's medical records to be no different from that utilized by the officer in *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135 (1994). In *Riedel,* the officer obtained the results of the appellant's BAC test merely by directing a written request to the hospital.

The Supreme Court noted in *Riedel* that an individual has a substantial privacy interest in his medical records which is subject only to reasonable searches and seizures. Generally, a search and seizure is not reasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause. *Id.* The court also noted that exceptions to the warrant requirement do exist. For example, actual consent, implied consent, search incident to lawful arrest and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search. The court determined that where probable cause to request a blood test under section 3755 or section 1547, (the implied consent law), exists, the fact that the officer chose to wait and obtain the appellant's test results by mailing a request to the hospital did not make the search less reasonable. The court found that the litmus test under section 3755 is the existence of probable cause to request a blood test, not the request itself and noted that

the search of appellant's medical records involved only a minimal intrusion into appellant's privacy. Therefore, the search of appellant's medical records and the seizure of his blood test results was reasonable under the Fourth Amendment of the United States Constitution.

Justice Zappala in a concurring opinion in *Riedel,* joined in by Justice Flaherty and Justice Cappy, determined that a different result would follow had the suppression issue been raised under our state constitution. Justice Zappala noted that Article I, Section 8 has an identity and vitality that is separate and distinct from that of the Fourth Amendment and that the decisions of the U.S. Supreme Court are not dispositive of questions regarding the rights guaranteed to citizens of the Commonwealth under our state Constitution. The concurring justices found that the protection provided by Article I, Section 8 extends to areas where an individual has a reasonable expectation of privacy. Since an individual has a reasonable expectation of privacy in his medical records, the protection provided by Article I, Section 8, encompasses this privacy interest. The concurring justices opined that under the Pennsylvania Constitution the warrantless search of Riedel's medical records was unreasonable and in violation of Article I, Section 8. *Id.* at 187, 651 A.2d at 143.

The concurring opinion in *Riedel* was adopted by the majority of the Supreme Court in *Commonwealth v. Shaw,* 564 Pa. 616, 770 A.2d 295 (2001). In *Shaw,* Trooper Todd Hershey, while investigating a two-vehicle accident, determined that defendant Shaw was the responsible driver. When the officer arrived at the scene, the defendant had

already been taken by ambulance to the Gettysburg Hospital. At the hospital, Trooper Hershey informed the defendant of his *Miranda* rights and the implied consent law and advised the defendant that the hospital would be drawing a sample of blood for treatment purposes. A few minutes later, hospital personnel drew a blood sample from the defendant for independent medical purposes. Trooper Hershey called the hospital laboratory a short time later and obtained the results which indicated a BAC of .267 percent. Following defendant's arrest for driving while under the influence of alcohol and related offenses, the investigating officer obtained the formal written results of defendant's BAC test through the issuance of a subpoena. The court found that since defendant's BAC test was not conducted pursuant to section 3755(a), the release of the results of the BAC test at the request of Trooper Hershey was not authorized by section 3755(a), nor was there any other statutory basis for releasing the result. The court held that the release of the result of defendant's BAC test, taken for independent medical purposes and not pursuant to section 3755(a), without a warrant and in the absence of exigent circumstances, violated Article I, Section 8 of the Pennsylvania Constitution. Accordingly, the BAC test results were suppressed.

In the case sub judice, the defendant's BAC tests not having been conducted pursuant to section 3755(a), the release of the results of the BAC test was not authorized by section 3755(a) nor could the same be released in the absence of a search warrant or other court order issued upon a finding of probable cause by an independent judicial officer. The release of these records to the police

pursuant to subpoena improperly issued by personnel of the district attorney's office without independent judicial review constitutes a warrantless search of the defendant's medical records which is not permitted under the Pennsylvania Constitution. *Id.*

The results of the BAC testing having been obtained by the police in violation of Article I, Section 8, of the Pennsylvania Constitution must, therefore, be suppressed.

## ORDER

And now, September 19, 2001, upon consideration of the omnibus pretrial motion filed by the defendant and following hearing thereon, it is hereby ordered and decreed that the request to suppress the defendant's UPMC medical records and the BAC test results of the defendant is granted.