

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2005

# Martin v. Red Lion Pol Dept

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4454

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Martin v. Red Lion Pol Dept" (2005). *2005 Decisions.* Paper 694.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/694

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-4454
_____

LANCE W. MARTIN,

Appellant

v.

RED LION POLICE DEPT.; RED LION BOROUGH;
MARK R. PRICE; YORK HOSPITAL;
PAUL R. STAUFFER; DANIEL D. DOWD, JR.;
ROBERT C. ELSER; LORI YOST; W. H. HUGHES

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 00-cv-01622)
District Judge:  Honorable James F. McClure, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
August 1, 2005

Before:  SLOVITER, BARRY and FISHER, Circuit Judges.

(Filed:  August 16, 2005)
_____

OPINION
_____

PER CURIAM.

        Lance W. Martin, proceeding *pro se* and *in forma pauperis*, filed a civil action on

September 12, 2000, to protest his treatment by police and hospital personnel during the

events that transpired after he drove into a parked car on June 28, 1998. In his amended complaint, he alleged that a Red Lion police officer, Mark R. Price, arrested him and took him to York Hospital, where, under the care of Drs. Paul R. Stauffer and Daniel D. Dowd, Jr., he was examined, involuntarily committed for severe mental illness, restrained, sedated with morphine, and held until July 3, 1998. He claimed that, during his hospital stay, his blood was drawn for laboratory tests over his refusal, and the results were turned over to the allegedly ill-trained Officer Price, who presented a search warrant with the permission of Red Lion Chief of Police W.H. Hughes. Martin contended that he reviewed his medical records on July 10, 1998. *See* Supp. App. at 75, ¶ 19. However, he also alleged that he did not learn that his blood had been tested or that the laboratory results of his blood testing had been turned over to the police until his September 21, 1998 preliminary hearing on D.U.I.-related charges[1] stemming from the June 28, 1998 accident. *See id.* at 75-6, ¶¶ 19-21.

---

[1]The charges were resolved with a grant of *nolle prosquei* and a dismissal of the D.U.I. charge, and a dismissal with prejudice of the careless driving charge in return for Martin entering a plea of guilty to a public drunkenness charge. Martin did not win a favorable termination of the charges against him, *see Hilfirty v. Shipman*, 91 F.3d 573, 575 (3d Cir. 1996); however, as the District Court suggested in its Order of May 15, 2002, and under the particular circumstances of Martin's prosecution, *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar Martin's claims, because they do not put the validity of his conviction into question. *See Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) (holding that claims relating to an illegal search or an improper arrest are not barred by *Heck* when they do not undermine the validity of a conviction).

2

Two groups of defendants, the hospital defendants and the police defendants (as defined in the District Court's Memorandum & Order), filed motions to dismiss Martin's amended complaint. The only remaining defendant,[2] Robert C. Elser, Ph. D, described in Martin's amended complaint as the Director of Clinical Chemistry and Immunochemistry at York Hospital, and as Stauffer and Dowd's supervisor, asserted defenses in his answer. The District Court granted the motions to dismiss, holding that Martin filed many claims beyond the applicable statute of limitations and otherwise failed to state a claim. The District Court also dismissed all claims against Elser pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Martin appeals. Because the District Court properly dismissed all claims in Martin's amended complaint, we will affirm.

Martin filed his lawsuit more than two years after many of his claims accrued; therefore, the applicable statute of limitations barred much of his suit. Martin's claims made pursuant to 42 U.S.C § 1983, as well as his state law claims, were governed by 42 Pa. C.S.A. § 5524, Pennsylvania's two-year statute of limitations for tort actions. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985). They accrued when he knew or should have known of the injuries on which his claims are based. *See Sameric Corp. v. Phila.*, 142 F.3d 582, 599 (3d Cir. 1991). Even if the administration of morphine blurred his awareness or his memory of how he was treated at the hospital, as he alleged, *see* Supp. App. at 76, ¶ 20, at the time of his discharge from the hospital, Martin knew that he had

---

[2]On Martin's motion, Lori Yost was dismissed as a defendant in May 2002.

been held at the hospital. At the very latest, he knew, or could have learned, about his admission, and mental health commitment, to the hospital, and the nature of his treatment, such as the use of restraints, at least some of the blood testing, and the medication with morphine, when he reviewed his medical records on July 10, 1998. *See* Supp. App. at 75, ¶ 19. *See also id.* at 85-7 (medical records) ("We did order stable trauma labs ... [and they] were ultimately performed."). Therefore, many of Martin's claims arising from his treatment, read broadly as claims for battery, conspiracy to commit battery, and false imprisonment, were time-barred at the time he first filed his lawsuit on September 20, 2000. Despite his arguments to the contrary, Martin did not make allegations that justify tolling the statute of limitations on equitable grounds or because of fraudulent concealment. In fact, the untimeliness of many of Martin's claims was apparent on the face of his complaint.

It is possible, at least from the face of the complaint, that Martin is within two years of learning about the testing of his blood for a blood alcohol level, and the remittal of his laboratory test results to the police. However, he failed to state a claim relating to these events. His allegations may be liberally construed as claims of violations of the Fourth Amendment and Pennsylvania's Art. I, § 8, and claims of a conspiracy to violate his federal and state constitutional rights and his rights under the Pennsylvania Mental Health Laws of confidentiality, *see* 50 Pa. C.S.A. § 7111.

4

Martin cannot show an unreasonable search and seizure in violation of the Fourth Amendment because Price allegedly required hospital personnel to test Martin's blood for blood alcohol content and turn over the results. Under the Fourth Amendment, a blood test must be reasonable, which means that an officer must have probable cause to require it, and it must be completed in a reasonable manner. *See Schmerber v. California*, 384 U.S. 757, 768 (1966). There was probable cause to require a blood test. In his amended complaint, Martin conceded that he struck a parked car while driving. *See* Supp. App. at 69, ¶ 9. He relied on hospital records in which hospital personnel described him as clinically intoxicated, with alcohol on his breath. *See id.* at 85-6. There was no allegation that the testing was not conducted in a reasonable manner. In addition, Price presented a search warrant before the blood test results were given to him. *See* Supp. App. at 72-3, ¶ 15. Because Martin did not state a claim for a Fourth Amendment violation against Price, the Fourth Amendment claim against Hughes, the Red Lion Borough, and the Red Lion Police Department also failed.[3] Similarly, because of the absence of a predicate violation of the Fourth Amendment, Martin did not state a claim for conspiracy to violate his Fourth Amendment rights.

---

[3]In addition, the Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983. *See Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) (holding that a municipal police department, without an identity separate from the municipality of which it is a part, is not a proper defendant in a § 1983 action).

Martin also did not state a conspiracy claim based on an alleged violation of the Pennsylvania Mental Health Laws of confidentiality, 50 Pa. C.S.A. § 7111, on the ground that some or all of the hospital defendants released Martin's blood test results to the police. Pennsylvania state law immunizes the hospital defendants from liability for taking blood from Martin, because there was probable cause to believe he had been driving under the influence. *See* 75 Pa. C.S.A. §§ 1547(j) & 3755(b) (2005). *See also id.* at § 3755(a) (imposing a duty to withdraw blood in potential D.U.I. cases). His allegations of conspiracy, as related to this claim and throughout his amended complaint, are conclusory, in any event.

As the District Court concluded, assuming *arguendo* that Martin could bring a private right of action for a violation of Art. I, § 8 of the Pennsylvania Constitution, the state constitutional protection against unreasonable searches and seizures, Martin cannot show such a violation because he alleged that Price obtained a warrant before obtaining the results of Martin's blood tests. *Commonwealth v. Shaw*, 770 A.2d 295, 299 (Pa. 2001), is distinguishable, for the reasons set forth by the District Court on pages 16 and 17 of its Memorandum.

Furthermore, the dismissal of the claims against Elser pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) was proper. It is well-established that there is no *respondeat superior* liability in § 1983 actions. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Elser, who was alleged to have been Dowd and Stauffer's supervisor, was not alleged to

6

have had any personal involvement with the actions that Martin found unsatisfactory. Furthermore, Elser was immune, like the other hospital defendants, from liability based on any role he may have had in the testing of Martin's blood and the release of Martin's laboratory test results to police. *See* 75 Pa. C.S.A. §§ 1547(j) & 3755(b) (2005).

In addition, Martin seeks to raise a Fifth Amendment claim. However, we will not consider this issue, because he raises it for the first time on appeal. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994).

Therefore, because many of Martin's claims were barred by the applicable statutes of limitations, as well as codified immunities, and because Martin otherwise failed to state a claim, Martin's amended complaint properly was dismissed. The District Court's order will be affirmed.