**COMMONWEALTH of Pennsylvania,** **Appellant**

v.

**Keith A. MILLER, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2009.

Filed May 24, 2010.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellant.

Lawrence J. Hracho, Reading, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, BENDER, BOWES, GANTMAN, DONOHUE, SHOGAN, and ALLEN, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, asks us to determine whether the Berks County Court of Common Pleas erred when it suppressed the results of a blood alcohol test performed on Appellee, Keith A. Miller, at a hospital following a motor vehicle accident. We hold the court improperly suppressed the results of Appellee's blood alcohol test because the

blood draw was conducted for independent medical purposes, there is nothing in the record to cast a shadow on this presumption, and the police properly obtained and executed a search warrant for the results. Accordingly, we reverse the suppression court's order and remand for further proceedings.

¶ 2 The suppression court opinion fully and correctly set forth the relevant facts of this appeal as follows:

On June 10, 2006, at 9:39 p.m., Officer Curt Unterkoefler of the Exeter Police Department arrived on the scene of a one-vehicle accident.... The Commonwealth offered no testimony as to the time of the accident. Upon arriving on scene[,] Officer Unterkoefler observed a black Ford Probe that had apparently struck a telephone pole head-on.

A man later identified as [Appellee] was unconscious and situated in the driver's seat of the vehicle. A volunteer first responder was situated in the passenger side of the vehicle stabilizing [Appellee's] head and neck. Officer Unterkoefler, upon approaching the vehicle, observed a strong odor of alcohol emitting from [Appellee's] person, and also an open container of beer inside the vehicle. Additionally, once fire personnel extricated [Appellee] from the vehicle and placed him in an ambulance, Officer Unterkoefler observed a strong odor of alcohol coming from [Appellee's] breath and person, as well as a case of beer located within the vehicle.

[Appellee] was then transported by ambulance to the Reading Hospital. Officer Darren S. Gartner, also of the Exeter Police Department[,] arrived on scene some time after [Appellee] had been transported away. As a result of the observations he made, consistent with those detailed above, Officer Gartner requested a search warrant for all the medical records, relevant to [Appellee], arising out of his medical treatment on the above noted date, specifically a blood alcohol content ("BAC") reading. Officer Gartner subsequently received a blood serum BAC reading and a toxicology report with respect to blood and urine samples obtained by the [h]ospital from [Appellee] on the date in question.

(Suppression Court Opinion, dated June 5, 2008, at 2–3). The tests revealed Appellee's BAC was 0.22%, and also indicated the presence of cocaine in Appellee's bloodstream.

¶ 3 On November 29, 2006, the Commonwealth charged Appellee with four counts of driving under influence of alcohol or controlled substance ("DUI")[1] and one count of careless driving.[2] On December 11, 2006, Appellee filed a suppression motion. In his motion, Appellee claimed no one had asked him to consent to blood testing, and he did not provide consent. Appellee also argued Officer Gartner's search warrant was overbroad, and the Commonwealth lacked any probable cause to support its request for BAC test results. Appellee concluded "the results of the chemical analysis of [his] blood alcohol content and urine test conducted on or about June 10, 2006, should be suppressed inasmuch as the testing was illegal and violative of [Appellee's] Constitutional rights...." (Omnibus Pretrial Motion, filed 12/11/06, at 2). Appellee filed a supplemental suppression motion, raising substantially similar claims, on February 12, 2007.

¶ 4 On March 6, 2008, the court conducted a suppression hearing. The court issued its findings of fact and conclusions of law

---

1. 75 Pa.C.S.A. § 3802.

2. 75 Pa.C.S.A. § 3714.

on April 15, 2008. The court determined the Commonwealth bore the burden to prove it had not obtained the blood test results in violation of Appellee's rights. Nevertheless, the court concluded "the record lacks any mention whatsoever as to any reason for [Appellee's] blood being drawn." (Findings of Fact and Conclusions of Law, filed 4/15/08, at 2). Therefore, the court entered an order granting Appellee's suppression motion with respect to the BAC results obtained pursuant to the search warrant.

¶ 5 The Commonwealth timely filed its notice of appeal on May 14, 2008. On April 29, 2009, a panel of this Court affirmed. On May 11, 2009, the Commonwealth requested *en banc* reargument, which this Court granted on July 7, 2009.

¶ 6 The Commonwealth now raises one issue for our review:

> DID THE TRIAL COURT ERR IN SUPPRESSING THE RESULTS OF THE TESTING OF BLOOD, WHICH WAS DRAWN FOR INDEPENDENT MEDICAL PURPOSES, WHICH WERE OBTAINED BY POLICE THROUGH A SEARCH WARRANT?

(Commonwealth's Brief at 4).

¶ 7 When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.

*Commonwealth v. Lehman*, 857 A.2d 686, 687 (Pa.Super.2004), *appeal dismissed as improvidently granted,* 584 Pa. 605, 886 A.2d 1137 (2005) (internal citations omitted). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Keller,* 823 A.2d 1004, 1008 (Pa.Super.2003), *appeal denied,* 574 Pa. 765, 832 A.2d 435 (2003) (quoting *Commonwealth v. Nester,* 551 Pa. 157, 160, 709 A.2d 879, 881 (1998)).

¶ 8 The Commonwealth contends a specific framework has developed to determine whether police have properly obtained BAC test results in cases where hospitals draw blood from a DUI suspect. The Commonwealth relies on *Commonwealth v. Shaw,* 564 Pa. 617, 770 A.2d 295 (2001), for the proposition that it must obtain a warrant for the release of BAC test results in cases where blood is not drawn pursuant to 75 Pa.C.S.A. § 3755(a) (governing blood draws conducted by emergency room personnel), or if the officer did not request a blood draw based upon probable cause of DUI. The Commonwealth asserts the instant case fits within the *Shaw* framework, because the officers did not ask medical personnel to draw Appellee's blood for testing, and the record does not indicate medical personnel drew the blood pursuant to Section 3755.

¶ 9 Although the suppression court emphasized the lack of testimony from medical personnel regarding the purpose of the blood draw, the Commonwealth submits such testimony is irrelevant. The Commonwealth argues medical personnel undisputedly drew Appellee's blood for an independent medical purpose, and Officer Gartner "took the conservative route in obtaining the results with a warrant." (Commonwealth's Brief at 10). The Commonwealth also relies on *Commonwealth v. West,* 834 A.2d 625 (Pa.Super.2003), *appeal*

*denied,* 586 Pa. 712, 889 A.2d 1216 (2005), for the proposition that testimony from medical personnel is not required where there is no controversy regarding the purpose of the blood draw. The Commonwealth concludes this Court must reverse the order suppressing the results of Appellee's BAC test and remand the case for trial.

¶ 10 Appellee maintains the Commonwealth failed to offer any evidence from medical personnel regarding why they conducted the blood draw. Citing *West,* Appellee claims the Commonwealth should have produced evidence "showing what the independent medical purpose was, or evidence to prove that the blood was drawn pursuant to a perceived duty by hospital personnel arising out of Section 3755." (Appellee's Brief at 8). Absent more, Appellee insists the Commonwealth failed to meet its burden to demonstrate the testing was for independent medical purposes or pursuant to Section 3755. Appellee concludes the court properly suppressed the BAC test results. We disagree.

■■■ ¶ 11 Courts of this Commonwealth have consistently recognized that an individual has a substantial privacy interest in his medical records. *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135 (1994).

> We note, however, that although [an individual] has an expectation of privacy in [his] medical records, this privacy interest does not preclude all searches and seizures of medical records. The proper function of ... Art. I, § 8 of the Pennsylvania Constitution, is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. Therefore, [an individual's] privacy interest [in his medical records] is subject to reasonable searches and seizures.

*West, supra* at 634 (quoting *Commonwealth v. Barton,* 456 Pa.Super. 290, 690 A.2d 293, 296 (1997), appeal denied, 549 Pa. 695, 700 A.2d 437 (1997)).

¶ 12 Generally, a search or seizure is unreasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause. *Riedel, supra.* "The 'implied consent' provision of the Motor Vehicle Code, however, dispenses with the need to obtain a warrant." *Keller, supra* at 1009 (quoting *Barton, supra* at 296). More specifically, our legislature has "enacted two statutes to allow law enforcement to preserve blood samples of a person suspected of driving under the influence of drugs or alcohol." *West, supra* at 629–30. Section 1547 of the Motor Vehicle Code governs blood testing as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)

\*　　\*　　\*

75 Pa.C.S.A. § 1547(a)(1). Section 3755 addresses reports by medical personnel:

§ **3755. Reports by emergency room personnel**

(a) **General rule.**—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S.A. § 3755(a). "As we have previously noted, 'the purpose underlying [implied consent] is to enable the police to obtain evidence of intoxication or drug use to be utilized in criminal proceedings.' It is **not** to hinder law enforcement officers in performing their duties under sections 3755 and 1547 when they have probable cause." *Riedel, supra* at 181–82, 651 A.2d at 140 (emphasis in original) (quoting *Commonwealth v. Kohl,* 532 Pa. 152, 164, 615 A.2d 308, 314 (1992)).

■ ¶ 13 Additionally, where a blood draw is conducted for medical purposes, and the results of the blood test are ob-

tained after proper execution of a search warrant, the results of the blood draw are admissible in the prosecution of a DUI defendant. *West, supra.* In *West,* an officer responded to the scene of a two-car accident. The defendant was the operator of one of the vehicles. The two occupants of the second vehicle died as a result of the accident. Upon arriving at the scene, the officer discovered the defendant, who admitted he was the operator of one of the vehicles. The defendant showed signs of intoxication, and he admitted he had been drinking prior to the accident. At that point, the officer arrested the defendant for DUI.

¶ 14 When ambulance personnel arrived at the scene, they determined the defendant should be taken to Indiana Hospital for treatment. The officer accompanied the defendant to the hospital. At the hospital, the officer incorrectly informed the defendant that if he did not consent to blood and urine testing, the tests would still be conducted. After a short period of deliberation, the defendant consented to the tests and hospital personnel collected blood and urine samples.

¶ 15 Following the initial blood draw, representatives from the district attorney's office arrived at the hospital and determined the officer had given the defendant inaccurate information on the consequences of refusing to consent to the tests. The law enforcement representatives immediately recognized the potential inadmissibility of the first blood draw. While prosecutors and police discussed the matter in a hospital hallway, an unidentified nurse approached the authorities and informed them that a second blood draw would be conducted for medical purposes. Nevertheless, hospital personnel did not conduct the second blood draw until fifteen minutes **after** the defendant had been discharged from Indiana Hospital because

doctors had decided to transport the defendant to Allegheny General Hospital for further treatment. Allegheny General personnel conducted a third blood draw upon the defendant's admission to their facility.

¶ 16 The police subsequently obtained a warrant for the defendant's three blood test results from both hospitals. Prior to trial, the defendant filed a motion to suppress all three blood test results. The court suppressed the first blood draw and urine sample obtained at Indiana Hospital. The court, however, refused to suppress the results of the second blood test from Indiana Hospital, as well as the third blood test from Allegheny General. Following trial, the defendant was convicted of multiple offenses related to DUI.

¶ 17 On appeal, this Court addressed the legality of each of the blood draws. Beginning with the third blood draw, this Court determined:

> It is undisputed that this draw was taken for independent medical purposes. No police officers or members of the Indiana County District Attorney's Office contacted anyone at Allegheny General to request this testing.
>
> \*       \*       \*
>
> Further, it is uncontroverted that the police obtained a warrant before requesting the results of [the defendant's] Allegheny General Hospital blood test. Therefore, because the blood draw was conducted for medical purposes, and the results of this blood test were obtained after the proper execution of a search warrant, the results of the blood draw were properly admitted into evidence at [the defendant's] trial.

*West, supra* at 633.

¶ 18 Regarding the second blood draw, the *West* Court emphasized this blood draw occurred at Indiana Hospital, fifteen minutes after the defendant had been discharged from that hospital. An analysis of the suppression hearing testimony from the officer and the district attorney suggested the nurse at Indiana Hospital had decided to arrange the second blood draw only after overhearing the authorities' conversation about the potential problems with the first blood draw. Under these circumstances, this Court questioned what motivated the second blood draw:

> While the testimony from [the officer and district attorney] helps to clarify some of what happened … on the night in question, the certified record is devoid of any further evidence supporting the Commonwealth's contention that this second blood draw occurred for independent medical purposes. [The nurse and district attorney] testified to the fact that [the attending physician] ordered this second blood draw. No witnesses testified about any independent medical purpose that caused [the attending physician] to order the second test, and [the attending physician] did not testify. **Thus, we cannot know for certain what motivated him to order this test after [the defendant] had already been discharged from the hospital's care.** Further, [the nurse's] testimony does not explain any independent medical purpose for this blood draw. [The nurse] revealed only that she drew [the defendant's] blood at the direction of [the attending physician]. She did not provide any further information as to why [the defendant's] blood was being drawn a second time or that [the defendant's] blood was being drawn pursuant to any … emergency room policy or procedure.
>
> \*       \*       \*
>
> **In light of the fact that [the defendant] had already been discharged from Indiana Hospital when the sec-**

ond blood draw occurred, a statement that the blood test was done for medical purposes does not suffice. The Commonwealth should have produced evidence showing what the "independent medical purpose" was, or evidence to prove that the blood was drawn pursuant to a "perceived duty" by Indiana Hospital arising out of Section 3755. Without more, we cannot say the contested Indiana Hospital blood draw was in compliance with the law. As such, the trial court should have suppressed those results.

*Id.* at 636–37 (internal citations omitted) (emphasis added). This Court saw the need for evidence of independent medical purposes regarding the second blood draw at Indiana Hospital only because it had been procured after the defendant's discharge from that hospital.

¶ 19 Instantly, Officer Unterkoefler responded to the scene of Appellee's motor vehicle accident. The officer observed Appellee's vehicle, which had struck a telephone pole head-on after failing to negotiate a curve in the roadway. When he approached the crash site, Officer Unterkoefler immediately detected the odor of alcohol inside the vehicle and on Appellee's person. Appellee was semi-conscious and moaning, but he could not respond to the officer's questions. After ambulance personnel had removed Appellee from the vehicle, Officer Unterkoefler also saw a case of beer behind the passenger's seat.

¶ 20 Based upon Officer Unterkoefler's investigation, Officer Gartner prepared a search warrant to obtain Appellee's medical records. (N.T. Suppression Hearing, 3/6/08, at 10). Officer Gartner prepared the warrant on June 21, 2006, eleven days after the accident. Officer Gartner executed the warrant on June 22, 2006 and obtained Appellee's "chem tox screen" from the hospital. (Search Warrant, dated 6/21/06, at 3). Importantly, no member of the Exeter Township Police Department directed hospital personnel to draw Appellee's blood. (N.T. Suppression Hearing at 10).

¶ 21 The circumstances of the present case are most like the third blood draw in *West*, where hospital personnel independently did a blood draw. There was no evidence to suggest Appellee's blood draw had been taken for any reason other than independent medical purposes. Absent more, the Commonwealth had no obligation to prove the sample was taken for independent medical purposes. The police obtained a valid warrant for the results of Appellee's blood test. Because the blood draw was conducted for independent medical purposes, and Officer Gartner obtained the results of this blood draw after applying for and executing a valid search warrant, the court should not have suppressed the BAC test results. *See West, supra.*

¶ 22 To the extent Appellee relies on this Court's analysis of the second blood draw in *West*, we emphasize the facts of the instant case are distinguishable. The *West* court questioned how the second blood draw could have been conducted for an "independent medical purpose," where the defendant had already been discharged from the hospital fifteen minutes before the blood draw occurred. *See id.* The present case contains no suggestion of shenanigans on the part of the hospital personnel or misinformation given to Appellee. Thus, we hold the Commonwealth had no need to produce additional evidence of the specific independent medical purpose for Appellee's blood tests. Proper application of *West* to the facts of this case simply does not compel a different result.

¶ 23 Based upon the foregoing, we hold the court improperly suppressed the results of Appellee's blood alcohol test because this blood draw was legitimately for

independent medical purposes, there is nothing in the record to cast a shadow on this presumption, and the police properly obtained and executed a search warrant for the results. Accordingly, we reverse the suppression court's order and remand for further proceedings.

¶ 24 Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

¶ 25 Judge ALLEN files a Dissenting Opinion in which Judge BOWES and Judge DONOHUE join.

DISSENTING OPINION BY ALLEN, J.:

¶ 1 I respectfully dissent. The Majority holds that the Commonwealth does not have the burden of proving that Appellee's blood draw was taken for an independent medical purpose, and presumes that Appellee's blood draw was conducted for a legitimate medical reason. Op. at 509–10, 515. Relying on this judicially-created presumption, the Majority concludes that the blood draw constituted a lawful seizure. In my view, application of the Majority's presumption effectively nullifies the Commonwealth's time-honored burden of proving the admissibility of the evidence. Unlike the Majority, I conclude that because the Commonwealth did not offer any evidence to establish that the hospital drew Appellee's blood for an independent medical purpose, the Commonwealth did not demonstrate by a preponderance of the evidence that the blood draw was obtained legally. Accordingly, I would affirm the trial court's order granting Appellee's motion to suppress.

¶ 2 Under Pa.R.Crim.P. 581(H), the Commonwealth "shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." *Id.* In cases involving blood tests, two types of searches typically occur: the search of the blood and the search of the medical records containing the results of the first search. *Commonwealth v. Riedel,* 539 Pa. 172, 651 A.2d 135, 138–139 (1994). This case concerns the legality of the former (the blood draw) and not the latter (the seizure of medical records).

¶ 3 It is well-established that the administration of a blood test for the purpose of obtaining evidence of guilt constitutes a "search" and a "seizure" which triggers the constitutional protections of the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "Before a law enforcement officer may lawfully take a blood sample without consent or a warrant, he or she must have probable cause to believe that the suspect has committed an offense of which the current state of one's blood will constitute evidence." *United States v. Chapel,* 55 F.3d 1416, 1419 (9th Cir.1995); *see United States v. Eagle,* 498 F.3d 885, 892 (8th Cir.2007); *United States v. Berry,* 866 F.2d 887, 891 (6th Cir.1989).

¶ 4 Under Pennsylvania statutes and relevant constitutional law, a blood draw is valid in three circumstances: (1) pursuant to 75 Pa.C.S.A. § 1547(a), an officer has probable cause to believe that the driver was DUI and requests the hospital to draw blood; (2) under 75 Pa.C.S.A. § 3755(a), the hospital itself determines that it has probable cause to believe that the driver was DUI and draws blood;[1] or (3) the

---

1. "Section 3755(a), by its plain language, requires *hospital personnel,* in cases where probable cause exists to believe that an emergency room patient has violated Pennsylvania's DUI statute, to take blood samples for BAC testing. There is *no* requirement in the

hospital draws the blood of the driver for an independent medical purpose, that is, to aid in treating the driver's medical condition. *Shaw,* 770 A.2d at 298–99; *Riedel,* 651 A.2d at 138–139; *Commonwealth v. West,* 834 A.2d 625, 631–38 (Pa.Super.2003).

¶ 5 In this case, the record indicates that Officer Unterkoefler did not request the hospital to draw Appellee's blood, and thus, the hospital conducted the draw on its own initiative. The question remains, however, whether Appellee's blood was drawn by the hospital: (1) solely for medical reasons, or (2) because hospital personnel had probable cause to believe that Appellee violated the DUI statute under 75 Pa.C.S.A. § 3755(a).[2]

¶ 6 In *West,* this Court held that the trial court erred in admitting the blood test results of the defendant's second blood draw performed at Indiana Hospital. In that case, the Commonwealth speculated that the hospital conducted the blood draw for either an independent medical purpose or pursuant to its own finding of probable cause under 75 Pa.C.S.A. § 3755(a). *Id.* at 637. At the suppression hearing, however, the Commonwealth failed to produce sufficient evidence to establish that the hospital performed the test for an independent medical purpose or pursuant to its "perceived duty" under 75 Pa.C.S.A. § 3755(a). *Id.* at 635–36. Notably, there was no testimony from hospital personnel explaining why—or for what purpose—the doctor ordered the blood test. *Id.* at 636. A panel of this Court found this deficiency in the evidence fatal, stating that "absent some explicit reason for the medical necessity of drawing blood from [the defendant] . . . or any evidence suggesting the test was taken in conjunction with Section 3755(a), we cannot see how the Commonwealth met its burden of proof and persuasion." *Id.* at 637–38.

¶ 7 The case at bar is materially indistinguishable from the second blood test at issue in *West.* Although Officer Unterkoefler's testimony revealed that he did not request the hospital to draw Appellee's blood under 75 Pa.C.S.A. § 1547(a), the Commonwealth, as in *West,* offered absolutely no evidence to demonstrate whether the hospital drew the blood for an independent medical purpose **or** pursuant to its own probable cause determination under 75 Pa.C.S.A. § 3755(a). I find that the Commonwealth's failure to demonstrate one or the other is problematic because each ground for admissibility has different consequences and accompanying standards of proof. For instance, if the hospital did, in fact, draw Appellee's blood for an independent medical purpose, then the blood draw would have been legal. In this context, the hospital would be a private actor, and Appellee's Fourth Amendment rights would not be implicated since there was no

statute that the BAC testing be conducted at the *request* of a *police officer.* The only requirement is the abstract requirement that 'probable cause exists to believe a violation of [of the DUI statute.]' If such 'probable cause exists,' then hospital personnel must take blood samples for BAC testing."
*Commonwealth v. Shaw,* 564 Pa. 617, 770 A.2d 295, 298 (2001) (emphasis in original).
"Section 3755(a) is, to say the least, inartfully drafted. For some vague and curious reasons, the legislature has required a probable cause determination without specifying who is to make such a determination, or how

such an abstract requirement is met." *Id.* at n. 3. "[A] determination **by hospital personnel** familiar with Section 3755(a) **that probable cause existed** to believe that that a person requiring treatment had violated [the DUI statute] would [ ] seem to mandate that hospital personnel conduct BAC testing." *Id.* (emphasis supplied).

2. I note that the hospital drew Appellee's blood to conduct a chemical toxicity screen; this test determines whether alcohol or drugs are present in the bloodstream.

state action in drawing the blood. *Riedel,* 651 A.2d at 138–39.

¶ 8 On the other hand, if the hospital did, in fact, draw Appellee's blood pursuant to its perceived statutory duty under 75 Pa.C.S.A. § 3755, then the hospital would be acting as an agent of the Commonwealth. *See id.; United States v. Attson,* 900 F.2d 1427, 1432 (9th Cir.1990) (stating that "where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, fourth amendment interests are implicated") (citation omitted). Thus, the blood draw would have constituted a search and seizure under the Fourth Amendment. *See Attson,* 900 F.2d at 1433. Consequently, to establish the admissibility of a blood draw taken pursuant to 75 Pa.C.S.A. § 3755, an employee of the hospital would have had to testify that he/she had probable cause to believe that Appellee was DUI. *See Shaw,* 770 A.2d at 298. These differences are legally significant, as proof of an independent medical purpose does not require a supplemental showing of probable cause, while proof a blood draw taken pursuant to 75 Pa.C.S.A. § 3755(a) requires an additional showing of probable cause. To reiterate, the record does not demonstrate whether hospital personnel drew Appellee's blood for medical purposes or pursuant to the directives in 75 Pa.C.S.A. § 3755.

¶ 9 By failing to establish the basis upon which hospital personnel drew Appellee's blood, the Commonwealth did not demonstrate that the blood sample was obtained in compliance with Appellee's constitutional or statutory rights. Quite simply, "[t]he Commonwealth should have produced evidence showing what the 'independent medical purpose' was, or evidence to prove that the blood was drawn pursuant to [the hospital's] 'perceived duty' arising out of Section 3755." *West,* 834 A.2d at 637. As a result, the legal basis for the admissibility of the blood draw is nothing more than speculation. Because the Commonwealth did not establish the legality of the initial blood draw by a preponderance of the evidence, the Commonwealth failed to demonstrate that the results of the blood draw were admissible into evidence.

¶ 10 To ease the Commonwealth's burden of proof in this matter, the Majority invokes a presumption against Appellee, assuming that all blood draws are taken for independent medical purposes, unless exceptional circumstances suggest otherwise. I particularly question the validity of such a presumption in light of 75 Pa. C.S.A. § 3755, which deputizes hospital personnel with the traditional and exclusive authority of the state to seize evidence upon their own finding of probable cause. *See supra,* at n. 1. The problem with the Majority's presumption is that doctors and medical personnel would, in essence, have an unencumbered license to draw blood, not for medical purposes, but for the sole reason of gathering evidence for the state.[3] The Majority's presumption would allow medical personnel, acting on behalf of the Commonwealth pursuant to 75 Pa.C.S.A. § 3755, to draw blood (forcefully if necessary and over a defendant's express refusal), without any showing of probable cause or consent, either express or implied. I conclude, accordingly, that application of the Majority's presumption would have the practical effect of abrogating the probable cause requirement of 75 Pa.C.S.A. § 3755 by dispensing with the Commonwealth's burden of establishing whether a blood test is admissible under that statute.

---

**3.** Indeed, under 75 Pa.C.S.A. § 3755(b), hospital personnel are required, without exception, to take the blood test and are granted civil and criminal immunity for any claims arising out of the withdrawal of blood.

Stated differently, the Majority presupposes that 75 Pa.C.S.A. § 3755(a) is inapplicable, by presuming that a blood test was done for independent medical purposes, thus relieving the Commonwealth of any obligation that it may have had to prove probable cause under 75 Pa.C.S.A. § 3755(a). I find this especially troubling because when an agent of the state withdraws blood for law enforcement reasons, a finding of probable cause is a constitutional necessity. *See generally Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (concluding that state hospital's policy to conduct involuntary drug testing of pregnant woman was unconstitutional because the immediate objective of the searches was to generate evidence for law enforcement purposes and there was no showing of articulable and individualized suspicion).

¶ 11 Moreover, in distinguishing the three blood tests in *West,* the Majority chooses when the Commonwealth must carry the burden to demonstrate that the blood draw was taken for an independent medical purpose. According to the Majority, in this case, "[t]here was no evidence to suggest Appellee's blood draw had been taken for any reason other than independent medical purposes," and thus, "the Commonwealth had no obligation to prove the sample was taken for independent medical purposes." Op. at 515. The Majority, however, concedes that the Commonwealth has a burden to prove a specific medical purpose under questionable circumstances, namely when a defendant's blood is drawn shortly after being discharged from a hospital. Op. at 514–15. Ultimately, the Majority submits that the Commonwealth only bears the burden of proving that a blood draw was taken for independent medical reasons when the record displays facts that "cast a shadow" on the "presumption" that the draw was for a legitimate medical purpose. Op. at 516.

¶ 12 I find the Majority's assessment of the Commonwealth's burden of proof untenable. The Commonwealth unconditionally bears the burden of establishing the admissibility of the evidence, including the legality of a blood draw. The Commonwealth, in all cases, carries the initial burden of proving that a blood draw was legal and admissible. Whether the Commonwealth bears the burden of proving the admissibility of a blood draw does not depend, as the Majority suggests, on the potential merits of the defendant's suppression motion. Contrary to the Majority, I find that the Commonwealth's burden of proving the legality of a blood draw should be uniformly applied irrespective of the factual predicates of a particular case.

¶ 13 For the above-stated reasons, I conclude that the Majority's not only abrogates the Commonwealth's burden of proof under Pa.R.Crim.P. 581(H), but also jeopardizes our citizens' Fourth Amendment rights to be free from unreasonable search and seizure. Where a police officer does not direct or request medical personnel to take a blood draw, I would require the Commonwealth to affirmatively establish whether the medical personnel took the blood draw for independent medical purposes or as part of its statutory duty under 75 Pa.C.S.A. § 3755. As explained above, if the blood draw was taken for medical reasons, then the search and seizure would be legal. If, on the other hand, the blood was drawn pursuant to 75 Pa.C.S.A. § 3755, then the search and seizure would be legal only if a hospital employee testified to facts establishing probable cause to believe that the driver was DUI. Accordingly, I respectfully dissent.